case we're going to hear is Martin v. Wood and Mr. Raab whenever you're ready we'll hear from you. May it please the court. I'm Sidney Raab. I'm a senior assistant for Attorney General Mark Early for the Commonwealth of Virginia and today I'm appearing for Jack Wood, the former hospital director at Eastern State Hospital, and Milagros Jones, a supervisor of nurses at Eastern State Hospital. This appeal, taken from a decision of the district court in Newport News, is important to the Commonwealth because it addresses, for the first time, the question of whether or not the umbrella, if you will, of sovereign immunity should be extended to supervisors, to persons making workplace decisions as part of their duties. As part of their official responsibilities, where there's been allegations by the plaintiff of violations of the Fair Labor Standards Act. In this case, the supervisor in question, Milagros Jones, had refused nurse, registered nurse Martin's request for overtime. Martin had said that she's been working nights and she's been working evenings and weekends and Jones did not think that she was eligible and would not grant overtime. And the allegations are that Jones went to others, I'm sorry, Martin went to others, requested it. The allegations are that she continued to work overtime. The allegations are that Director Wood, who was the hospital director, also condoned or affirmed the denial of overtime benefits. We believe that the court's decision in Lizzie v. Alexander, the 2001 decision, should be controlling here. The Lizzie decision was, of course, under the Family Medical Leave Act. And the Lizzie decision, though, is in two distinct parts. The first part of the Lizzie decision had to do with whether or not the Washington Metropolitan Area Transit Authority would enjoy the same state immunity from an FMLA claim as would be enjoyed by states such as Virginia and Maryland. And the court analyzed that a creation by compact of the states would be entitled to that sovereign immunity. Excuse me, I did have a factual question. Is there, and I apologize if I just missed it, is there evidence of any official policy on overtime compensation in the record? And I'm particularly interested in something showing whether or not individual supervisors have discretion, what discretion they have in terms of implementing an overtime policy. No, because this came on the complaint, and it was a motion to dismiss it, under 12b-1, the record does not contain that. Thank you. In the Alexander case, the second part, Lizzie v. Alexander, was a discussion of the allowance of individual shelter from liability, the 11th Amendment shelter, for Alexander and the other supervisors. Lizzie was a mechanic working on wheelchair lifts. And he made a claim for his absence due to sickness that his supervisor Alexander and the other supervisors were skeptical of. And they actually launched an investigation against Lizzie. And they terminated him on the grounds of his misrepresentation with respect to his sickness. And then Lizzie brought the cause of action not only against WMATA, the employer, the corporate employer, but also against seven individuals, and he claimed that they were liable as well for violations of the Family Medical Leave Act. The Fourth Circuit said in this second part of Lizzie that we have allegations here unclear as to whether or not Lizzie is claiming that he's suing in a personal or official capacity, but it really doesn't matter. Because essentially, the allegations of what Alexander did in terms of his consideration of Lizzie's matter were inextricably tied to the workplace. They were workplace decisions. There was no indication of any personal motive. There was no indication of anything outside of the workplace. There was no indication of ultra-virus action. Getting back to our case. Our case simply involves analogous facts. But the District Court, in consideration of this request for dismissal, essentially minimizes the impact of Lizzie. The Court didn't imply Lizzie did. It distinguished it saying, number one, it was an FMLA case, and number two, there were District Court decisions that had her undermined. The District Court decisions all involved entities that were not entitled to Eleventh Amendment immunity. She particularly cited the Loudoun County decision. You didn't have to go that far because it's hard for a District Court decision to undermine the Fourth Circuit decision, which controls the District Court. I agree, Your Honor. When she discussed Lizzie, she did quote Judge... How did she distinguish between the FMLA and the FLSA? I don't think that she did. I think that she recognized that the statutory language, employer including an agent of the employer, is the same. The FMLA was modeled after the older FLSA. So she didn't distinguish between the two. She just said that the Lizzie was an FMLA decision, not an FLSA. But that's not an important distinction because the thrust should be when Eleventh Amendment immunity should be afforded to protect a supervisor working for the state, rather than what the statutory obligation might be. We wouldn't be here on this appeal if it had not involved the constitutional issue. That's how, of sovereign immunity, that's how we get the right under Puerto Rico aqueduct to appeal. She did quote Judge Legg's language in Coleman v. Maron Court of Appeals. Of course, that's a decision that went to this court, considering the FMLA, and then went to the Supreme Court, ultimately holding where the individual is caring for himself, that the Eleventh Amendment immunity applies, rather than under the Hibbs case and the other cases that FMLA trumps Eleventh Amendment immunity where there's care for others. But she quotes the Coleman case for the proposition that individual state defendants in official capacity claims absent clear facts to the contrary that would expose them to personal liability. The district court said that she had clear facts because the plaintiff had alleged that this was personal. And I would submit that she overlooked the Lizzie requirement that the actions must be inextricably intertwined. If they are inextricably intertwined with workplace actions, then you do not place the supervisor outside of the umbrella. And what's your counter-argument to the district court's conclusion that the complaint alleges significant intentional misconduct committed by the appellants? It's still workplace misconduct. Lizzie says that the defendants... Clearly that sweeps too broadly. Any activity that a supervisor engages in is not going to be within the scope of employment, just because it's the supervisor and it takes place in the workplace. No, if the supervisor and the supervisee had met on the soccer field and had a brawl concerning their daughter's game, if the supervisor had an early onimus or prejudice against the employee because of the domestic relations dispute that they had had, if the supervisor had acted ultra-virus, if the supervisor had acted out of a response that was not linked to the workplace, what we're trying to do with 11th Amendment immunity is allow people to take these positions of responsibility without fear of a very broad liability for violations of these statutes. That's the purpose of extending immunity to them. But at this juncture, in the procedural posture that we're in, we don't know if the supervisor was acting within the scope of its authority. But the facts are exactly as they were in Lizzie Alexander. Well, not exactly. I mean, the defendants here are sued in their individual capacities. But the Fourth Circuit said in Lizzie that the form of the suit is not what counts. What counts is whether or not the substance rather than the form. Yes. It says acted directly and indirectly in the interest of Eastern State Hospital in relation to hours of work and payment of wages to Eastern State Hospital employees, including Martin, and was the employer of Martin under the meaning of the FOA. In effect, the plaintiff conceded. Well, he's alleging that it's the workplace. He's alleging that they're acting within the scope of their duties, not outside the scope of their duties. And then when they charge these people, they say unlawfully, willfully, deliberately, failed and refused to include that work time in the computation of weekly wages. Again, bringing it to the decision that Milagros Jones had to make as to whether or not this registered nurse who was claiming extra hours would be entitled to it. So actually in Lizzie Alexander, Mr. Alexander took much more hostile steps toward Mr. Lizzie. He investigated his claim of sickness. And he fired him because he didn't believe his claim of sickness. So, and I also cited in the reply brief several other cases, both from the district courts and the Montgomery, Maryland case from this court, which followed later in the same year. And none of those cases saw any activity by the supervisor that took the supervisor outside the workplace that indicated something which factually would sustain personal liability. Since Trombley, we certainly cannot have district judges taking conclusionary remarks, such as capacity, individual capacity. We have to have facts pled which would take it outside of this inextricably tied to the work criteria. And the Brown case I cite, the Williams versus Dorster County case that I cite, these are all additional decisions under the FMLA in which it was simply a workplace decision. And that's what I think we have here, a workplace decision. And in the district court's efforts to place the burden, if you will, and in her discussion of whether this should be 12-1 or 12-B-1 or 12-B-6, the district court seemed to overlook the substantive criteria set forth in Lizzie that only where she could find activity not inextricably tied to workplace decision-making. That's all that she has here. So the matter at least should be vacated and perhaps should be remanded to the district court who might make a decision whether or not leave to amend would be viable or futile. But why would you concede that? Why would I concede that? No, it's because it hasn't reached the merits. The substance of the complaint basically says I came to work a little early, I worked through breaks sometimes, and I worked a little bit afterwards. And I wanted overtime and they refused to give it to me, and they basically said that it was a reflection of her inefficiencies. And they said this is a direct and indirect, the interest of the hospital in relation to hours of payment of wages under the FLSA. In that respect, they have not alleged that. And there is no other allegation substantively in the complaint. That's the complaint. It's a Fair Labor Standards Act violation of refusing to pay over 40 hours, time and a half. I don't understand why you say we ought to concede and find more facts. I don't concede that we should. I do concede that this is not a merits decision. This is not a merits decision. And I leave that to the wisdom of the court. You were just saying if we should go totally off the reservation and remand it, then we should nicely. I stand corrected. If there's nothing further, I'll reserve the rest of my time. Thank you. All right, Mr. Rabb. Excuse me, Mr. Hogg. Yes, Your Honor. Hogg. Hogg. Thank you. There's never been anybody who's ever pronounced my name correctly on the first attempt. Well, you can drop a few of the letters and get it. Well, my ancestors indeed should have done that. Maybe I should take care of that business. I apologize. Not necessarily. May it please the court, I'm Ray Hogg, and I'm representing Laura Martin here today in this Fair Labor Standards Act matter. This case involves several core questions, most or all of which are actually easier than they are portrayed by the Commonwealth. The first question is, is an FMLA case controlling in a Fair Labor Standards Act case? You're going to tell us why it shouldn't be. You're just outlining. I'm outlining, but yes, Your Honor. My answer is it may give guidance, and the Family and Medical Leave Act was in some ways modeled after the Fair Labor Standards Act, but in other ways is not identical. So you're making an argument that Lizzie's not applicable because the acts are different? I'm arguing that Lizzie is not controlling because the Commonwealth has argued that Lizzie is controlling. It's not. It does, in our view, provide some guidance, but it's not controlling because it's not a Fair Labor Standards Act case. But I will address Lizzie because it does bear upon the Court's view indirectly because the FLSA and the FMLA bear some similarities. So the first question in our view is whether... Doesn't Lizzie basically... It doesn't depend on the statute. It depends on... It was an employer-employee relationship case, as is this one, but it said who is the real party in interest to apply that test. That is... Lizzie applied that test in the Family and Medical Leave Act context. I understand. And the question is if we were to apply that test here, you'd get the same result as Lizzie got, wouldn't you? I mean, this is actually clearer than Lizzie. If you apply that... If the test is applied properly here, applying the same analysis as Lizzie, then the Court properly denied the motion to dismiss for reasons which I'll try to explain. All right. The second question I think that's important to focus on is the simple question of can supervisors be individually liable under the Fair Labor Standards Act generally? And everybody, I think, agrees yes. That's Hornbook law, that supervisors can be liable. Now, the next question is do supervisors get Eleventh Amendment immunity if they are really sued solely in their individual capacity? And we respectfully submit that the law is clear that if it's really an individual suit against an individual, they do not get Eleventh Amendment immunity. So how is this really an individual suit against an individual other than the fact that the complaint says individual capacity? Because as Lizzie pointed out to some extent and several other cases I'll describe briefly, explain, you look at the complaint to see the substance of what the complaint is saying. If the complaint... Maybe the best thing I can do is by way of an example. In the... Why don't we look at this complaint? This complaint basically says that these people worked more than 40 hours by coming to work a little early, 20 minutes early maybe, working through breaks and by working after work, staying after work for the transition to the next group. And that the supervisors, several of them, they went to them and said they want overtime and they were denied overtime and that they were deliberately denied overtime. And that's it. In violation of the 40-hour work week under the FSLA. Now that's the role that these individuals played on behalf of, and it states this too, the interest of Eastern State Hospital in relation to hours of work and payment of wages. That is what they did, but the factual context is that those individuals were... They were making their own decisions and the fact that it happens in the workplace, we respectfully submit, is not the end of the question as the Commonwealth States does. It's the payment of wages, though. They made decisions about what the hospital, the state institution was going to pay these people in wages. And they were in a supervisory role and they made those decisions and they made them deliberately, intentionally, because that's what they intended. And they basically concluded, according to the complaint, that these people worked through their breaks and things because they were inefficient and should be able to do it in 40 hours. Now they may be wrong and you may be entitled to 40 hours, but there can be no question that these individuals were acting other than as agents of the hospital on behalf of the hospital's financial condition and payment of wages. That's where I think we respectfully disagree, Your Honor. I've got the complaint right here. You can point it to me. Well, the factual context is that the Commonwealth of Virginia certainly has a policy of saying pay overtime when it's due. And these people, I've- Where does it say that? Well, perhaps I should have pled that, but I think- Well, even if you pled that, they're going to say when it's due, the supervisor said they're not due because they're inefficient. And he may be wrong. But he's still acting on behalf of the hospital in the payment of wages, and your claim is under the FMLA, which is the payment of wages beyond 40 hours. This is a straight-on FMLA case, and the employees were acting in discharge of their duties under that, may be wrongfully. But the question then is why isn't that just making a Lizzie claim? Because, and I apologize, I do not have the full complaint in front of me, but I think if you'll look at the complaint- There's only a few pages. You know, it's right here. Well, I believe the complaint alleges, Your Honor, that the defendants knew that they were violating the Fair Labor Standards Act and did it anyway. No. It says they deliberately failed to pay the wages, to include the work time in the computation of wages. That was a deliberate act. It wasn't accidental. They intended to deny them that, and they took the position that they would not authorize, because it was treated as a reflection of inefficiency or incompetence. In paragraph 45 says that Wood did it as a part of his job duties and responsibilities at the hospital. And he did, but that's not the test. If you look at Lizzie and you look at the other cases, the question is not whether the person in question did this as part of their job duties, because if that were the test, then there wouldn't even be a question, because every time you have one of these cases, somebody's doing this as part of their job duties. The question is who's the real party in interest under Lizzie, and the real party in interest is based on whose fisc is being involved, who's going to pay it, what are the terms and conditions of employment going to be changed, and all of those questions are directly on here. If the Commonwealth had to pay the judgment for the Fair Labor Standards Act, then the Commonwealth would be the real party in interest. One of the things that is articulated as a distinction is that the relief sought here was declaratory relief in damages. Is that correct? Right. What would you anticipate declaratory relief against would consist of? Simply that would and Milagros, each of them, violated the Fair Labor Standards Act and are owed the damages. I mean, the declaratory relief may to some extent be superfluous. But back to your Honor's point, the question is who is the real party in interest. That's the question. And if the defendants were applying a compensation policy, for example, which violated the Fair Labor Standards Act, then the state would obviously be the real party in interest. That's Henley v. Simpson cited in the brief. We don't need to speculate on what it is because the complaint says it. They acted directly and indirectly in the interest of Eastern State Hospital in relation to the hours of work and payment of wages to Eastern State Hospital employees, including Martin, and was an employer of Martin within the meaning of the Fair Labor Standards Act. They're acting in the interest of the hospital in connection with his payment of wages. It couldn't be more direct. But that doesn't make the Commonwealth the real party in interest because the Commonwealth has no dog in this fight. Well, it makes the hospital the real party in interest. No, the hospital has no dog in this fight. There is no way, there is nothing that the hospital stands to lose or the Commonwealth stands to lose by a judgment against these two individuals. That's why they're not, the Commonwealth and the hospital are not the real party in interest. You don't think that after a verdict in your favor in this case, they're going to start paying the overtime of all the nurses that come in there? Whether they do, that will be up to them. Hold it. You think we enter a judgment here and says they're going to have to pay them for the 20 minutes before, pay them for the work during breaks, and pay them for the 30 to 90 minutes after that the hospital can stand around afterwards? We don't allege that this was a systematic action. You said they went to one supervisor and they went to the next? Yes, this particular individual did that. Nothing in our complaint alleges that this is some kind of systemic thing at the hospital that would impact other nurses. This is one nurse. And in fact you did say it was, there was some personal, you didn't phrase it quite this way, but it was motivated by personal animus. There was. Now that really goes more to the defamation claim. I don't want to overstate that in terms of the real party and interest analysis. The real party and interest analysis looks at whether the hospital is on the hook for this judgment. And there's been no explanation for how the hospital's been on the hook for the judgment, no evidence of how the hospital's on the hook for the judgment. Any suggestion that the hospital's going to be affected in any way by this judgment requires speculation. Now, in the Henley v. Simpson case, which is a Fifth Circuit case, that is more to what you refer to in terms of a system-wide situation because there was a compensation policy that was wrong. And there were individuals sued for implementing that compensation policy. But clearly those individuals, they were doing something that had to do with the whole policy. It was a systemic issue. So a judgment would, in fact, have a systemic effect. Here is an entirely different case. Here we have one nurse affected by two supervisors. And the fact that it happened at work doesn't make the state the real party and interest because, again, the state or the hospital has no dog in this fight. There's nothing in the pleadings that alleges the hospital will be affected. And it would just require speculation. Help me understand how a decision in your favor could be cabined so as not to incent employees to attempt in-runs around sovereign immunity defenses by pleading that the individual supervisor just didn't like me because I was red-headed and that's ultra-vires. You see where I'm going with this. It is a troubling prospect that would need to be subject to some strict parameters. And I agree with that. You know, every decision this court makes can be abused in some way. And if the court were to rule in our favor and hold that under this complaint, and that's all that's before the court. In Lizzie, there was a complaint before the court that didn't say whether those people had individual liability or what. It was devoid of hardly any facts that told them one way or the other. Lizzie stands for that complaint. This case stands for this complaint. And it's just part of the judicial process that the district courts are going to have  And I think as attorneys, we're under an obligation to not do in-runs. I think the attorney obligation of candor to the tribunal requires us to only assert a plausible individual case when there really is one and not do an in-run. How do you keep it from being abused? I think the district courts below will examine each complaint as it comes up, inquire into is this really an individual case that has to do with just two supervisors doing wrong things? Or is this a case that's systemic involving a compensation policy or involving everybody throughout the hospital doing the same thing at the direction of the guy at the top? That's not this case. This case is two supervisors doing illegal things to one nurse. So I think to answer your question more succinctly than I have, the district courts will have to scrutinize the complaints. I'm sure we can rely upon the commonwealth to assert this whenever it may be applicable. The district courts then will have to make a judgment on whether it is an individual case or whether it's not an individual case and make a decision on whether the state is the real party in interest. But I think one of the consistent threads running through all the decisions that apply to this issue and that are cited in the record are that this is an individualized examination. This is not a carte blanche rule that can be applied. And I think even Lizzie recognizes that. If you look at Lizzie, Lizzie examines what does this complaint say? What does this complaint not say? So applying Lizzie, there's nothing inconsistent with what I'm saying with what Lizzie says. In fact, I'm saying the same thing. The court needs to look at the individual complaint, the facts alleged in the individual complaint, and decide for itself, is this an end run? Because if it's an end run, then the commonwealth should get immunity. But not everything is an end run. Sometimes the state doesn't have a dog in the fight. The state's not exposed to liability. And any effect that something might have on the state is really just speculation. If that's the case, then there's no rational reason for extending immunity to an individual. And, in fact, it would defeat the whole purpose of the Fair Labor Standards Act, providing individual liability, to keep the supervisors honest, so to speak. So I see that my time is about up. I would ask if there are any other questions from the bench. All right. Thank you, Mr. Rapp. Thank you, Mr. Paul. Mr. Rapp. I'll limit myself to two small points. First, it isn't the Fifth Circuit's decision in Hensley that we're seeking to have applied as precedent. The Lizzie case was an individual. It was an individual supervisor. There were six other supervisors. But there's no language in the Lizzie decision that says, in order to extend the umbrella of 11th Amendment immunity, we have to have a broad-based class action that immediately impacts the state entity by virtue of a large number of claims. However, I think Judge Niemeyer's remark earlier about what do we do about the next person that has an overtime issue, what do we do about the overtime policies of Eastern State Hospital, what do we do about hiring the next director or the next supervisor who might fear personal liability, in that respect, Lizzie does stand for the proposition that there are long-term real interests in the Commonwealth Center at the Eastern State Hospital in not having the umbrella collapsed without including the supervisor director. And the second small point is that Judge Duncan had asked about the animus, the personal animus, and I've been looking through the complaint. The strongest allegations with respect to Director Wood and Ms. Martin, I think, appear in 27 and 28. Those are paragraphs. And they are peculiarly about the incident report that he made, which has to do with Martin's performance in which a patient suffered. It peculiarly has to do with what Martin is construing to be defamation by the report. Although lawyers recite, we incorporate all previous allegations, I think the words in 27 and 28 are clearly defined to point to Wood's animus with respect to that report and not to the animus of either Milagros Jones or Director Wood with respect to the Fair Labor Standards Act. Was the defamation claim remanded? It was remanded to the circuit court for James City County, yes, at the same time that the FLSA action was kept under the most recent federal statute, which gives the court discretion to do that. And then the district court went on to decide the merits of the motion to dismiss that Wood and Jones had filed. Yes, Your Honor. Anything further? Okay. Thank you. Thank you. We'll come down at Greek Council and take a short recess.
judges: Paul V. Niemeyer, Allyson K. Duncan, Stephanie D. Thacker